# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

MARIO AVILA, JR.,

      Plaintiff,

STATE OF WISCONSIN – DEPARTMENT OF           **Case No. 2:20-cv-00051**
HEALTH SERVICES, ADMINISTRATOR OF
HEALTHCARE FINANCING ADMINISTRATION
(THE UNITED STATES GOVERNMENT – MEDICARE)

      Subrogated Involuntary Plaintiffs,

  v.

U.S. CORRECTIONS, LLC,
PRISONER TRANSPORTATION SERVICES, INC.,
JASON WILLIAMS,
THOMAS FIGONI,
LUIS F. GONZALEZ,
DAMIEN J. LOWE,
THAYER KIM TOWNSEND,
CHRISTOPHER SNOW,
ASHLEY JACQUES, and
CERTAIN UNDERWRITERS AT LLOYD'S, LONDON
SUBSCRIBING TO POLICY NO. CJ10028616,

      Defendants.

## THIRD AMENDED COMPLAINT

NOW COMES the Plaintiff, Mario Avila, Jr., by his attorneys, First, Albrecht & Blondis,

S.C. and alleges the following:

## I. <u>INTRODUCTION</u>

1.      This is a civil rights and negligence action for damages brought under state law and

42 U.S.C § 1983. Mario Avila, Jr., while in the custody of U.S. Corrections, LLC, was subjected

to an illegal assault and beating at the direction of U.S. Corrections, LLC, employees, who also

acted with objective unreasonableness and demonstrated deliberate indifference to and reckless disregard of a known serious medical need. Defendants' conduct caused significant physical and emotional injuries to Mr. Avila in violation of the United States Constitution and Wisconsin and Missouri state law.

## II.  JURISDICTION AND VENUE

2.      This Court has original jurisdiction over this matter under 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4). The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a). Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Plaintiff's claims arose in this County (Milwaukee County).

## III.  PARTIES

3.      Mario Avila, Jr., is an adult resident of the City of Milwaukee, Wisconsin, with a mailing address of 2067 South 5th Place, Milwaukee, WI 53204. He presently resides at the Skyway Motel, located at 8361 South 27th Street, Franklin WI 53132, in Room 23. At all times material hereto, Mr. Avila was a pretrial detainee of Milwaukee County and under the direct custody, control, and supervision of the Defendants.

4.      Subrogated Involuntary Plaintiff State of Wisconsin-Department of Health Services (hereinafter "WI DHS") operates and administers the state's Medicaid program a/k/a Title XIX and BadgerCare Plus, and may have paid certain hospital, medical, and related expenses on Mr. Avila's behalf and may claim to be subrogated to his rights and is, therefore, joined as an involuntary plaintiff for the purpose of compliance with Wis. Stat. § 803.03. Mr. Avila seeks a determination as to the extent and nature of any subrogation and/or reimbursement rights of said involuntary plaintiff.

2

5.     Subrogated Involuntary Plaintiff Administrator of Healthcare Financing Administration, the United States Government a/k/a Medicare ("Medicare"), was and is the federal government, and it issued and operates a medical health insurance plan and program. Medicare may have paid certain hospital, medical, and related expenses on Mr. Avila's behalf and may claim to be subrogated to his rights and is, therefore, joined as an involuntary plaintiff for the purpose of compliance with Wis. Stat. § 803.03. Mr. Avila seeks a determination as to the extent and nature of any subrogation and/or reimbursement rights of said involuntary plaintiff.

6.     Defendant U.S. Corrections, LLC (hereinafter "U.S. Corrections") is a foreign limited liability company incorporated under the laws of North Carolina, registered and licensed to do business in Wisconsin, with its principal office located at 517 Hickory Hills Boulevard, Whites Creek, TN 37189. U.S. Corrections' registered agent for service of process in the State of Wisconsin is Cogency Global Inc., 901 South Whitney Way, Madison, WI 53711.

   a.     As relevant herein, U.S. Corrections is a "person" for purposes of 42 U.S.C. § 1983.

   b.     Upon information and belief, at all times relevant hereto, a contract was in effect between Milwaukee County and U.S. Corrections, under which U.S. Corrections was required to provide, *inter alia*, safe transportation of inmates and detainees to various jails and other correctional institutions, including the Milwaukee County Jail.

   c.     Upon information and belief, U.S. Corrections' contract for provision of comprehensive transportation services required U.S. Corrections and its employees and agents to fulfill all constitutionally and statutorily required duties of the Milwaukee County Sheriff for pretrial detainees in their custody.

3

d. U.S. Corrections' acts and omissions during transit to the Milwaukee County Jail, including the acts and omissions of its employees and agents, including Jason Williams, Thomas Figoni, Luis F. Gonzalez, Damien J. Lowe, Thayer Kim Townsend, Christopher Snow, and Ashley Jacques at all relevant times, were conducted under color of state law.

e. Defendant U.S. Corrections is directly liable for the acts and omissions of its employees and agents.

7. Defendant Prisoner Transportation Services, Inc. (hereinafter "PTS") is a foreign corporation incorporated under the laws of Tennessee, with its principal office located at 517 Hickory Hills Boulevard, Whites Creek, TN 37189. PTS's registered agent for service of process in the State of Tennessee is Davidson Corporate Services, Inc., 511 Union Street, Suite 1600, Nashville, TN 37219.

a. As relevant herein, PTS is a "person" for purposes of 42 U.S.C. § 1983.

b. Defendant PTS is liable for the acts and omissions of its employees and agents, specifically those of Defendant U.S. Corrections and its employees and agents, pursuant to the doctrines of successor liability and joint venture.

8. Defendant Jason Williams (hereinafter "Williams") was and is an adult residing at 103 Davis Road E, Valdosta, GA 31601, and was employed as a correctional officer by U.S. Corrections at all times relevant hereto. He is sued in his individual capacity. Williams acted under color of state law and within the scope of his employment with U.S. Corrections at all times relevant hereto.

9. Defendant Thomas Figoni (hereinafter "Figoni") was and is an adult residing, upon information and belief, at 1469 Pine Marsh Loop, Saint Cloud, FL 34771, and was employed as a correctional officer by U.S. Corrections at all times relevant hereto. He is sued in his individual

4

capacity. Figoni acted under color of state law and within the scope of his employment with U.S. Corrections at all times relevant hereto.

10. Defendant Luis F. Gonzalez (hereinafter "Gonzalez") was and is an adult residing at 2209 Opal Drive, Orlando, FL 32822, and was employed as a correctional officer by U.S. Corrections at all times relevant hereto. He is sued in his individual capacity. Gonzalez acted under color of state law and within the scope of his employment with U.S. Corrections at all times relevant hereto.

11. Defendant Damien J. Lowe (hereinafter "Lowe") was and is an adult residing, upon information and belief, at 6315 Westgate Drive, Orlando, FL 32835, and was employed as a correctional officer by U.S. Corrections at all times relevant hereto. He is sued in his individual capacity. Lowe acted under color of state law and within the scope of his employment with U.S. Corrections at all times relevant hereto.

12. Defendant Thayer Kim Townsend (hereinafter "Townsend") was and is an adult residing, upon information and belief, at 1860 Courtland Boulevard, Deltona, FL 32738, and was employed as a recruiting and training sergeant by U.S. Corrections at all times relevant hereto. He is sued in his individual capacity. Townsend acted under color of state law and within the scope of his employment with U.S. Corrections at all times relevant hereto.

13. Defendant Christopher Snow (hereinafter "Snow") was and is an adult resident of the State of Florida, and upon information and belief, he resides at 5857 Lake Champlain Drive, Orlando, FL 32829, and was employed as a supervisor, training sergeant, and Acting Director of Operations in the absence or unavailability of Mr. Ashley Jacques by U.S. Corrections at all times relevant hereto. He is sued in his individual capacity. Snow acted under color of state law and within the scope of his employment with U.S. Corrections at all times relevant hereto.

14. Defendant Ashley "Ash" Jacques (hereinafter "Jacques") was and is an adult resident of the State of Florida, and upon information and belief, he resides at 15441 Greater Groves Boulevard, Clermont, FL 34714, and was an owner and operator of U.S. Corrections, which also employed him. Jacques was the Director of Operations at U.S. Corrections and was responsible for any medical decisions relating to detainees from the time they were accepted for pickup by U.S. Corrections and through the time they were accepted by the receiving facility. He is sued in his individual capacity. Jacques acted under color of state law and within the scope of his employment with U.S. Corrections at all times relevant hereto.

15. Defendant Certain Underwriters at Lloyd's, London Subscribing to Policy No. CJ10028616 (hereinafter "Lloyd's") was and is now a collection of insurance underwriters, otherwise known as a syndicate. Said insurance entity was and is engaged in the indemnity and liability insurance business and provided insurance to Defendant U.S. Corrections and its employees, including Defendants Williams, Figoni, Gonzalez, Lowe, Townsend, Snow, and Jacques, and is directly liable to the Plaintiff for his injuries pursuant to Wis. Stat. §§ 632.24 and 803.04(2). Lloyd's is directly liable to Plaintiff Mario Avila, Jr., for the negligence of Defendants U.S. Corrections and its employees, including Defendants Williams, Figoni, Gonzalez, Lowe, Townsend, Snow, and Jacques as alleged herein, through the terms of its policy and the laws of the State of Wisconsin. The policy was in full force at the date and time of the events described below.

## IV. STATEMENT OF FACTS

### A. Background Regarding U.S. Corrections and PTS.

6

16.     A *de facto* merger occurred between U.S. Corrections and PTS as of November 10, 2016.[1]

17.     As consideration for the transaction, U.S. Corrections executives and directors received shareholder stock interest in PTS, in lieu of cash,[2] thereby establishing successor liability pursuant to the *de facto* merger. *Leannais v. Cincinnati, Inc.,* 565 F.2d 437, 439 (7th Cir. 1977).

18.     Prior to the *de facto* merger being finalized, PTS and USC began operating a joint venture.

19.     PTS directed USC employees to retrieve PTS transport vans and place them into USC's van rotation for use in USC's operations.

20.     The increased passenger capacity allowed by the vans caused a financial benefit to PTS and USC.

21.     At the direction of PTS, Defendant Townsend incorporated PTS training materials into the USC training PowerPoint presentation.

22.     In August 2016, USC business development director, Dustin Baldwin, relocated to Tennessee, the home of PTS, for the express purpose of integrating USC and PTS.

23.     PTS and USC engaged in a common purpose of transporting inmates and detainees, and the two entities shared the profits derived therefrom prior to and following the completion of the merger.

24.     PTS and USC had an equal right to control the conduct and operation of the venture.

---

[1] PTS was granted common control of U.S. Corrections on November 10, 2016. (Surface Transportation Board Decision 45537, Dkt. No. MCF 21067, https://dcms-external.s3.amazonaws.com/MPD/62491/E81A360FF0CB5E1485258067007F8693/45537.pdf (last accessed June 30, 2020).

[2] Surface Transportation Board Decision 45260, Dkt. No. MCF 21067, https://dcms-external.s3.amazonaws.com/MPD/62491/4D3400983E93B09185257FD90061F24B/45260.pdf (last accessed June 30, 2020).

25.     Following the *de facto* merger, which was finalized in late 2016 or early 2017, PTS continued the enterprise of U.S. Corrections using the same facilities, equipment, employees, managers, executives, and business operations.

**B.      Background Regarding Mr. Avila's Detention in Texas.**

26.     On or about December 14, 2016, Mario Avila was detained in Zavala County, Texas pursuant to an arrest warrant issued in Milwaukee County, Wisconsin.

27.     Mr. Avila was booked into the Zavala County Jail on or about December 14, 2016 to await extradition to Milwaukee. During the course of Mr. Avila's detention, he was never brought before a court and had not been adjudicated guilty by any court. Thus, Mr. Avila was a pretrial detainee as the State had not acquired the right to punish him under the Eighth Amendment. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015).

28.     Mr. Avila was in custody at the Zavala County Jail for approximately two weeks while he waited to be extradited to Milwaukee.

29.     On or about December 28, 2016, while exhibiting severe distress, Mr. Avila was loaded by Defendants Williams and Figoni onto a transport van owned and operated by U.S. Corrections.

30.     Mr. Avila continued to exhibit severe distress at the time he was picked up by U.S. Corrections and throughout his transport.

**B.      Warren County, Missouri.**

31.     On or about December 30, 2016, the U.S. Corrections transport van carrying Mr. Avila and others arrived at the Warren County Jail in Warren County, Missouri.

32.     Mr. Avila continued to exhibit severe distress when the transport arrived at the Warren County Jail.

8

33.     After a restroom stop at the Warren County Jail, Mr. Avila screamed and begged for protection from the U.S. Corrections team, including Defendants Williams and Figoni.

34.     Mr. Avila shouted that Defendants Williams and Figoni and the other inmates and detainees on the transport were out to kill him.

35.     Warren County Jail and Sheriff's Department officers and employees assisted Defendants Williams and Figoni in carrying Mr. Avila through the jail, back to the transport van, while he was screaming and pleading not to be placed back in the U.S. Corrections transport van.

36.     Defendants Williams and Figoni continued to ignore Mr. Avila's distress.

37.     Warren County Sheriff's Department in Warrenton Missouri offered to let U.S. Corrections leave their female detainee at the Warren County Jail so that Mr. Avila could be placed in the separate compartment of the transport van. Had this been allowed, Mr. Avila would have been separated from all other detainees during transport.

38.     Upon information and belief, Defendants Williams and Figoni contacted a U.S. Corrections dispatcher to inquire as to whether they could leave a female detainee in the custody of Warren County Sheriff's Department so that Mr. Avila could be transported in the separate van compartment that had been used to keep the female detainee separate from the male detainees. Upon information and believe, the dispatcher contacted Defendants Snow and Jacques to review Defendants' request.

39.     Upon information and belief, Defendants Snow and Jacques, in their supervisory capacities and as decision makers, denied Defendants Williams's and Figoni's request to leave the female detainee with Warren County Sheriff's Department.

40.     Upon information and belief, throughout multiple contacts between Defendants Williams and Figoni and the U.S. Corrections's dispatchers, who were directed by Defendants

9

Snow and Jacques, Defendants Williams and Figoni were instructed to continue transporting Mr. Avila.

41.     Upon information and belief, Defendants Snow and Jacques made the decision to refuse Defendants Williams's and Figoni's requests based upon U.S. Corrections widespread practice and *de facto* policy of placing profits over safety, which was the moving force behind Mr. Avila's injuries.

42.     Despite his pleas, Mr. Avila was placed back onto the U.S. Corrections transport van, and the remaining inmates and detainees being transported were brought to board the transport.

43.     Seeing Mr. Avila screaming and acting in an out of control manner, the other inmates and detainees made remarks insinuating they would hurt Mr. Avila to make him quiet down.

44.     While the inmates and detainees were loaded into the van with a screaming Mr. Avila, Defendant Figoni told the other inmates to "take care of [Mr. Avila] as [they] saw fit," or "do what you gotta do" with Avila.

45.     When the doors of the transport van were closed a commotion began to occur within the transport van and Mr. Avila could be heard screaming and pleading for assistance.

46.     Defendants Williams and Figoni knew that Mr. Avila was being violently beaten and did not intervene.

47.     Defendants Williams and Figoni knew that Mr. Avila was being beaten by the inmates and detainees on the U.S. Corrections transport van, but acted objectively unreasonably by not taking steps to intervene and protect Mr. Avila and by not providing medical care for his known injuries.

10

### C.  Van & Driver Change in St. Louis, Missouri.

48.     On or about the night of December 30, 2016, the U.S. Corrections transport van arrived to the St. Louis County Jail in order to change vans and transport officers at the direction of Jacques and because of Mr. Avila's injuries.

49.     At the St. Louis County Jail, Defendants Gonzalez and Lowe took control of the U.S. Corrections transport carrying Mr. Avila and discovered Mr. Avila had severe injuries.

50.     When the inmates and detainees were transferred to a different U.S. Corrections transport van, Mr. Avila was unable to walk.

51.     Upon information and belief, Defendants Gonzalez and Lowe called dispatch, and their supervisors at U.S. Corrections, Defendant Townsend, Defendant Snow, and/or Defendant Jacques, to request advice regarding how to proceed.

52.     Upon information and belief, despite his knowledge of Mr. Avila's obvious need for immediate medical attention, as informed by Defendants Gonzalez and Lowe, Defendants Townsend, Snow, and/or Jacques advised Defendants Gonzalez and Lowe to continue transporting Mr. Avila without procuring the medical care that Mr. Avila desperately needed.

53.     Upon information and belief, it was obvious to Defendants Gonzalez and Lowe that Mr. Avila needed immediate medical attention for the injuries he suffered from being beaten by the other inmates. However, Defendants Gonzalez and Lowe did not seek medical care for Mr. Avila.

54.     Defendants Townsend, Snow, and/or Jacques made the decision to not allow Defendants Lowe and Gonzalez to seek medical care for Mr. Avila based upon U.S. Corrections widespread practice and *de facto* policy of placing profits over safety, as evidenced by Defendant Lowe's statement to Milwaukee County sheriff deputies that courtesy holds and unscheduled stops

11

cost U.S. Corrections money, and that U.S. Corrections officials want drivers to "keep pushing." The widespread practice and *de facto* policy was the moving force behind Mr. Avila's injuries.

### D. U.S. Corrections Transport Arrives in Wisconsin.

55.     The U.S. Corrections transport team, now consisting of Defendants Gonzalez and Lowe, travelled to their scheduled stop at the Kenosha County Jail in Wisconsin with Mr. Avila, who continued to suffer an obvious and known medical emergency. Despite this knowledge, Defendants Gonzalez and Lowe ignored Mr. Avila's medical emergency and did not obtain the medical care he needed.

56.     Mr. Avila repeatedly requested that Defendants Gonzalez and Lowe take him to a hospital during the trip from St. Louis, Missouri to Kenosha, Wisconsin. However, Defendants Gonzalez and Lowe ignored Mr. Avila's requests, and chose to do nothing.

57.     On or about the morning of December 31, 2016, the U.S. Corrections transport team arrived at the Milwaukee County Jail.

58.     Upon arrival and upon observing severe bruises, cuts, scrapes, and bloodied face, Milwaukee County Jail nursing staff medically refused to accept Mr. Avila as an inmate due to his severe injuries.

59.     Milwaukee County Jail nursing staff ordered that Mr. Avila be immediately transferred to a local hospital in Milwaukee.

60.     Defendants Gonzalez and Lowe informed Milwaukee County Jail nursing staff that Mr. Avila had been in this observed condition since they picked him up in St. Louis County.

61.     At the hospital, Mr. Avila was admitted to the intensive care unit and treated for a brain bleed, bacterial meningitis from head injuries, severe injuries to his right eye, five teeth that had been broken out, bruised ribs, and other injuries.

62.    The acts and omissions by U.S. Corrections and its employees, including Defendants Williams, Figoni, Gonzalez, Lowe, Townsend, Snow, and Jacques were a direct cause of Mr. Avila's unnecessary severe pain, suffering, and injuries.

63.    Mr. Avila suffered a serious and obvious medical emergency on or about December 30, 2016, yet he received no medical care until arriving at the Milwaukee County Jail, whose personnel refused to accept Mr. Avila on or about December 31, 2016.

64.    Had U.S. Corrections, Williams, Figoni, Gonzalez, Lowe, Townsend, Snow, and Jacques secured proper and necessary medical care for Mr. Avila, he would not have endured such significant pain, suffering, and injuries.

## V.    STATEMENT OF CLAIMS

### Constitutional Claims

65.    Milwaukee County took Mario Avila into legal and physical custody as a pretrial detainee, thereby establishing a special custodial and supervisory relationship toward him to provide, *inter alia*, protection from known harms and necessary medical care. Milwaukee County contractually delegated and shared this duty with U.S. Corrections and PTS pursuant to the doctrines of successor liability and joint venture. This special custodial and supervisory relationship consequently gave rise to affirmative contractual legal duties by U.S. Corrections, PTS, and its employees to secure Mr. Avila's liberty interests and rights, including his physical safety, essential care and treatment, and his right to be free from unnecessary pain and suffering, substantive rights which are also protected by the Fourteenth Amendment to the U.S. Constitution. The conduct of each Defendant, as detailed above, caused Mr. Avila to suffer unnecessary physical and emotional pain, and injury in violation of his Fourteenth Amendment rights.

13

66.     U.S. Corrections, and PTS pursuant to the doctrines of successor liability and joint venture, authorized, tolerated, ratified, permitted, or acquiesced in policies, practices, and customs, oral and written, pronounced, and *de facto*, including: U.S. Corrections detainee medical decisions made in the interest of profitability and cutting costs, irrespective of appropriate medical judgment, which were objectively unreasonable and further exhibited a substantial departure from accepted professional judgment, practices, and/or standards.

These policies, practices, and customs were the moving force which caused the deprivation of Plaintiff's constitutional rights.

67.     Defendants Williams's, Figoni's, Gonzalez's, Lowe's, Townsend's, Snow's, and Jacques's deliberate actions and inaction and reckless disregard of their respective constitutional duties, as detailed above, caused the Plaintiff to suffer physical and emotional injury.

### State Law Claims

68.     The respective conduct of Williams, Figoni, Gonzalez, Lowe, Townsend, Snow, and Jacques violated their respective duties of care toward the Plaintiff and was a substantial factor in and caused Mr. Avila's pain, suffering, and injury.

69.     Defendants Williams and Figoni encouraged and negligently did not take steps to intervene to prevent the physical attack on Mr. Avila by the other inmates and detainees on the U.S. Corrections transport van, as described above.

70.     Defendants Williams, Figoni, Gonzalez, Lowe, Townsend, Snow, and Jacques negligently ignored Mr. Avila's known complaints and their own observations and/or understanding of his serious medical condition.

71.     Defendants Townsend, Snow, and Jacques negligently failed to provide adequate training to Defendants Williams, Figoni, Gonzalez, and Lowe.

72.     Defendants Snow and Jacques negligently failed to provide adequate training to Defendant Townsend.

73.     The negligence of Williams, Figoni, Gonzalez, Lowe, Townsend, Snow, and Jacques caused Mr. Avila's pain, suffering, and injury.

74.     U.S. Corrections is liable for all negligent acts and omissions of its employees, agents, and contractors pursuant to the doctrine of *respondeat superior*.

75.     PTS is liable for all negligent acts and omissions of U.S. Corrections and its employees, agents, and contractors pursuant to the doctrines of successor liability and joint venture.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands a jury trial and prays that this Court:

1.      Enter judgment for Plaintiff against each Defendant, jointly and severally, awarding compensatory damages.

2.      Enter judgment for Plaintiff against Defendants Williams, Figoni, Gonzalez, Lowe, Townsend, Snow, and Jacques awarding punitive damages.

3.      Award pre-judgment and post-judgment interest, together with costs, disbursements, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

4.      Award such other relief as may be just and equitable.

5.      Award such other remedies as may be available under the law.

6.      Plaintiff Mario Avila also seeks a determination as to the amount, if any, owed to the Subrogated Involuntary Plaintiffs.

15

Dated at Milwaukee, Wisconsin this 24th day of July, 2020.

**FIRST, ALBRECHT & BLONDIS, S.C.**
Attorneys for the Plaintiff Mario Avila, Jr.

s/ Thomas C. Lenz

_____

Thomas C. Lenz
State Bar. No. 1055135
tlenz@fabattorneys.com

s/ James P. End

_____

James P. End
State Bar No. 1032307
jend@fabattorneys.com

s/ Christopher G. Meadows

_____

Christopher G. Meadows
State Bar No. 1055144
cmeadows@fabattorneys.com

s/ Bryn I. Baker

_____

Bryn I. Baker
State Bar No. 1102534
bbaker@fabattorneys.com

s/ Alexa C. Bradley

_____

Alexa C. Bradley
State Bar No. 1102009
abradley@fabattorneys.com

Broadway Theatre Center
158 North Broadway, Suite 600
Milwaukee, WI 53202
Telephone: (414) 271-1972
Facsimile: (414) 271-1511

16